**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

JOSHUA N. HARDIN,

    Plaintiff,

v.                                                                            Case No: 3:18-cv-3-J-32JBT

SGT. J. JONES, et al.,

    Defendants.

_____

# ORDER

## I. Status

Plaintiff, an inmate of the Florida penal system, is proceeding on a Second Amended Civil Rights Complaint (Doc. 35; SAC) against two Defendants: Sgt. Johnathan Jones and A. Zarate.[1] Plaintiff sues Defendants in their individual and official capacities, arguing that "Defendants violated federal as well as state law" prohibitions against cruel and unusual punishment. Doc. 35 at 3. He claims that on or about December 26, 2017,

> [Plaintiff] was placed in a cell with a gang member who advised the [a]forementioned off[icers] that he would slap the shit out of [Plaintiff] should [Plaintiff] become his cellmate. [A]forementioned off[icers] placed [Plaintiff] in the cell and [he] was slap[ped] and pushed onto the floor and punched in the left temple x3. All officials refused to remove me from the cell and allowed this inmate to batter me for approximately 6 ½ hours. On or about January 1, 2018, Inspector Gamble investigated the assault and took pictures of the injuries. All officers acted in official capacity at the

---

[1] The Court dismissed the claims against Defendant Gamble. See Doc. 61.

> time of the incident and further knowingly/willfully subjected [Plaintiff] to cruel and unusual punishment.

Doc. 25 at 5. In addition to his Eighth Amendment claim, Plaintiff also alleges that Defendants' conduct was negligent. Id. at 5. Plaintiff argues that as a result of the incident, he suffered bruising to the left side of his face and continues to experience extreme paranoia. As relief, he requests $35,000 in monetary damages. Id.

Before the Court is Defendants' Motion to Dismiss (Doc. 45; Motion).[2] The Court advised Plaintiff that the granting of a motion to dismiss would be an adjudication of the claim and could foreclose any subsequent litigation of the matter and provided Plaintiff with an opportunity to respond. See Doc. 36. Plaintiff filed a Response in opposition (Doc. 51; Response), a Motion Requesting a Hearing (Doc. 65), and a Notice of Intent (Doc. 66). The Motion is ripe for review.

## II. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount

---

[2] Defendant Zarate filed the Motion to Dismiss, see Doc. 45, and the Court later granted Defendant Jones's request to join the Motion to Dismiss, see Doc. 61.

2

to "naked assertions" will not do. Id. (quotations, alteration, and citation omitted). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted). The Court liberally construes the pro se Plaintiff's allegations. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011).

### III. Analysis

Defendants request dismissal for the following reasons: (1) Plaintiff failed to properly exhaust his administrative remedies; (2) the claims for monetary damages against Defendants in their official capacities are barred by the Eleventh Amendment; and (3) Plaintiff's state law negligence claim is subject to dismissal. See generally Doc. 45.

**A. Exhaustion**

The Prison Litigation Reform Act (PLRA) requires exhaustion of available administrative remedies before a 42 U.S.C. § 1983 action with respect to prison conditions may be initiated in a district court by a prisoner. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted."); see also Woodford v. Ngo, 548 U.S. 81, 92-93 (2006) (noting that a prisoner must exhaust administrative remedies before challenging the conditions of confinement, and concluding that the PLRA demands "proper exhaustion"). Nevertheless, prisoners are

3

not required to "specially plead or demonstrate exhaustion in their complaints." See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id.

Importantly, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). See also Jones, 549 U.S. at 211. The Supreme Court has instructed that while "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford, 548 U.S. at 101, "exhaustion is mandatory . . . and unexhausted claims cannot be brought," Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citing Jones, 549 U.S. at 211). Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies of the institution. Woodford, 548 U.S. at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

Id. at 90 (citation omitted). Indeed, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Id.

Because failure to exhaust administrative remedies is an affirmative defense, the defendant bears "the burden of proving that the plaintiff has failed to exhaust his

4

available administrative remedies." Turner, 541 F.3d at 1082. The Eleventh Circuit has articulated a two-step process that district courts must employ when examining the issue of exhaustion of administrative remedies.

> In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082–83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015).

The FDOC provides inmates with a three-step grievance process for exhausting administrative remedies. As the Eleventh Circuit has described it:

> The grievance procedure applicable to Florida prisoners is set out in § 33-103 of the Florida Administrative Code. Section 33-103 contemplates a three-step sequential grievance procedure: (1) informal grievance; (2) formal grievance; and then (3) administrative appeal. Dimanche, 783 F.3d at 1211. Informal grievances are handled by the staff member responsible for the particular area of the problem at the institution; formal grievances are handled by the warden of the institution; and administrative appeals are handled by the Office of the Secretary of the FDOC. See Fla. Admin. Code. §§ 33-103.005–103.007. To exhaust these remedies, prisoners ordinarily must complete these steps in order and within the time limits set forth in § 33-103.011, and must either receive a response or wait a certain period of time before proceeding to the next step. See id. § 33-103.011(4).

5

Pavao, 679 F. App'x at 824. However, a prisoner may bypass the first two steps in the case of "[e]mergency grievances and grievances of reprisals, [and] protective management," among others. Fla. Admin. Code r. 33-103.007(3)(a). A prisoner permitted to bypass the first two steps may proceed directly to the third step by filing a grievance with the Office of the Secretary of the FDOC. Id. When a prisoner files a grievance directly with the Secretary, he must do so "within 15 calendar days from the date on which the incident or action which is the subject of the grievance occurred." Fla. Admin. Code Ann. r. 33-103.011(d).

Here, Defendants assert that the SAC is due to be dismissed because Plaintiff failed to properly exhaust his administrative remedies. They argue that Plaintiff did not file any grievance regarding his Eighth Amendment claim. Doc. 45 at 8. In his Response, Plaintiff alleges that he exhausted his administrative remedies, because he filed an emergency grievance. Doc. 51 at 1. Notably, Plaintiff appears to allege that the cellmate who battered him also raped him and that Defendants allowed this inmate to commit these acts without disciplinary action. See Doc. 66-1 at 1. According to Plaintiff, he filed an emergency grievance regarding the sexual assault and the assault/battery and the emergency grievance was referred to the Office of the Inspector General. Doc. 51 at 1-2. He further alleges that the Inspector General's Office then initiated a Prison Rape Elimination Act investigation, and that the current "complaints . . . against Defendant[s] . . . as well as PREA investigation [was] a single episode and therefore directly related." Doc. 51 at 2. Plaintiff argues that once his emergency grievance was referred to the Inspector General's Office and it initiated an

6

investigation, he satisfied the PLRA's exhaustion requirement regarding the claims in his SAC. Doc. 65 at 2.

Accepting Plaintiff's view of the facts as true, the Court finds dismissal of the claims against Defendants for lack of exhaustion is not warranted at the first step of Turner. Thus, the Court proceeds to the second step of the two-part process where the Court considers the Defendants' arguments regarding exhaustion and makes findings of fact. In doing so, the Court finds that Defendants have not carried their burden of showing that Plaintiff failed to exhaust his administrative remedies.

Defendants do not dispute that the Inspector General's Office initiated an investigation. Instead, they seemingly argue that the subject investigation did not involve the Eighth Amendment deliberate indifference claim raised here; and even assuming the investigation did involve the current claim, the Inspector General's Office initiation of an investigation alone is not enough to demonstrate proper exhaustion. Doc. 45 at 4. However, the cases that Defendants cite to support their argument are factually distinguishable from this case. See Doc. 45 at 4-5. Notably, the defendants in those cases provided the court with documentation and record evidence showing that those plaintiffs' exhaustion efforts were insufficient, because either those plaintiffs' emergency grievances were not filed on the proper form, the FDOC's written response to the emergency grievances provided that the plaintiffs were required to seek an appeal, or grievance logs and declarations by FDOC employees demonstrated that the plaintiffs did not file any grievances. See Schlicher v. Fla. Dept. of Corr., 399 F. App'x 538, 539 (11th Cir. 2010) (noting that defendants provided documentation

7

showing the plaintiff's informal and formal grievances were either filed at the wrong level or not appealed after they were denied, and that the "letters" to the Secretary of the FDOC and the Office of the Inspector General did not satisfy the requirements of an emergency grievance); Griffin v. Keys, No. 5:14cv282/RH/CJK, 2016 WL 8731790, at *4-6 (N.D. Fla. Jan. 20, 2016) (considering the substance of the plaintiff's grievances and the FDOC's responses in dismissing the complaint for failure to exhaust); Hope v. Walker, No. 5:13cv362/WS/CJK, 2015 WL 5190435, at *5 (N.D. Fla. Aug. 18, 2015) (finding the FDOC's referral of the plaintiff's formal grievance to the Office of the Inspector General did not satisfy exhaustion requirement, because the FDOC's written referral/response stated that the plaintiff may obtain further review by submitting an administrative appeal); Vinci v. Culpepper, No. 3:10cv173/MCR/EMT, 2012 WL 3155618, at *3 (N.D. Fla. July 13, 2012) (finding the defendants met their burden of showing the plaintiff failed to file any grievances regarding his claims, because they submitted affidavits from relevant FDOC employees); Toler v. Halley, No. 3:09cv523/MCR/CJK, 2012 WL 555740, at *5 (N.D. Fla. Jan. 12, 2012) (holding the plaintiff's verified pleading, response to the defendants' motion to dismiss, and sworn affidavit admit that the plaintiff did not use or attempt to use the administrative grievance process to exhaust his claims).

However, because Defendants have not presented evidence supporting their argument, the Court must accept Plaintiff's responsive allegations that he bypassed the first two steps of the grievance process, timely and properly filed an emergency grievance regarding this Eighth Amendment deliberate indifference claim, and that

8

the FDOC referred that emergency grievance to the Inspector General's Office, prompting the investigation. Further, the Court must accept Plaintiff's unrefuted allegation that once his exhaustion efforts were successful – once the FDOC referred his emergency grievance to the Inspector General's Office – Plaintiff was not required to pursue subsequent stages of the administrative grievance process or wait for the conclusion of the Inspector General's investigation. See, e.g., Luckey v. May, No. 5:14-cv-315-MW-GRJ, 2016 WL 1128426, at *11 (N.D. Fla. Feb. 17, 2016) (finding that after the plaintiff filed emergency grievance and the emergency grievance was approved and referred to the Inspector General's Office for an investigation, the plaintiff was not required to wait until conclusion of investigation or seek an appeal before filing suit); see also Lanier v. Smith, No. 3:08-cv-833-J-12JRK, 2009 WL 1758904, at *1 (M.D. Fla. June 19, 2009) (denying motion to dismiss for failure to exhaust, because the plaintiff's grievances were referred to the Inspector General's Office for review and consideration). As such, Defendants' Motion as to exhaustion is due to be denied.

**B. Eleventh Amendment Immunity**

Defendants argue that Plaintiff's claim for monetary damages against them in their official capacities should also be dismissed, because they are entitled to Eleventh Amendment immunity. Doc. 45 at 9. The Court agrees that such claims are barred by the Eleventh Amendment. See, e.g., Hayes v. Sec'y, Fla. Dep't of Children & Families, 563 F. App'x 701, 703 (11th Cir. 2014) ("The Eleventh Amendment also prohibits suits against state officials where the state is the real party in interest, such that a plaintiff could not sue to have a state officer pay funds directly from the state treasury for the

9

wrongful acts of the state."). As such, Defendants' Motion is due to be granted to the extent that Plaintiff requests monetary damages from Defendants in their official capacities.

**C. State Law Claim**

Defendants argue that Plaintiff's "negligence claims under Florida law are subject to dismissal." Doc. 45 at 9. According to Defendants, "Plaintiff appears to impliedly invoke the Court's supplemental jurisdiction [over state law claims] by raising negligence claims against Defendant[s] . . . , stating that Defendant[s] [have] 'violated Federal as well as state law' . . . and requesting relief from Defendant[s] 'due to complete negligence.'" Doc 45 at 9. They argue that they are, in their individual and official capacities, immune from a negligence state law claim. Doc. 45 at 9-10. In support of this assertion, Defendants quote section 768.28, Florida Statutes, arguing:

> Plaintiff sues the [D]efendant[s] as . . . employee[s] of the FDC, a state agency. An employee of the State cannot be sued in his official capacity under State law. Instead, "[t]he exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an . . . employee . . . of the state . . . shall be by action against the government entity, or head of such entity in her or his official capacity." § 768.28(9)(a), Fla. Stat.

Doc. 45 at 9-10. However, a review of section 768.28(9)(a), Florida Statutes, reveals that Defendants omitted a material phrase of the statute's language. The last sentence of Defendants' quote should include the following exception: "<u>unless</u> such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." §

10

768.28(9)(a) (emphasis added). This is exactly what Plaintiff alleges. As such, Defendants' Motion is due to be denied as to the state law claims.

Accordingly, it is

**ORDERED:**

1. Defendants' Motion to Dismiss (Doc. 45) is **GRANTED in part and DENIED in part.** The Motion is **GRANTED to the extent** that all claims for monetary damages against Defendant Jones and Defendant Zarate in their official capacities only are **DISMISSED**. The Motion (Doc. 45) is otherwise **DENIED**.

2. Plaintiff's Motion Requesting a Hearing (Doc. 65) is **DENIED without prejudice**.

3. Defendants shall file an answer to the Second Amended Complaint by **February 17, 2020**.

4. The parties shall serve all discovery requests no later than **March 10, 2020**. A party to whom a discovery request is directed must respond within the time permitted by the Federal Rules of Civil Procedure. Any motions relating to discovery shall be filed by **April 30, 2020**.

5. All motions to dismiss and/or for summary judgment shall be filed by **May 26, 2020**.[3] This deadline is also applicable to the filing of any motions or the raising of any affirmative defenses based on qualified immunity.

6. Responses to any motions to dismiss and/or for summary judgment shall

---

[3] The Court requires the complete transcript of any deposition submitted as an exhibit.

11

be filed by **July 3, 2020**.

7. The parties are encouraged to discuss the possibility of settlement and notify the Court if their efforts are successful. In doing so, Plaintiff and Defendants are encouraged to maintain a realistic approach in making and/or considering any settlement offers.

8. As to the taking of Plaintiff's deposition, if necessary, the Court grants permission to Defendants' counsel. Defendants' counsel must contact the Warden of Plaintiff's institution to arrange an appropriate time and place for the deposition.

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of January, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C: Joshua N. Hardin, #N28219
    Kristen Jennifer Lonergan, Esq.