UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOSHUA N. HARDIN,

    Plaintiff,

v.                                            Case No. 3:18-cv-3-MMH-JBT

SGT. J. JONES and ZARATE,

    Defendants.
_____

# ORDER

## I. Status

Plaintiff Joshua N. Hardin, an inmate of the Florida penal system, initiated this case by filing a pro se Civil Rights Complaint (Doc. 1) on January 2, 2018.[1] He is currently proceeding on a Second Amended Complaint (Doc. 35; Second Amended Complaint or SAC) against two Defendants: (1) Johnathan Jones, a Sergeant with the Florida Department of Corrections (FDOC); and (2) FDOC Correctional Officer Zarate. Hardin asserts that "Defendants violated

---

[1] Hardin signed and dated the Complaint on December 28, 2017, and it was received and filed by the Clerk on January 2, 2018. See Complaint (Doc. 1) at 14.

federal as well as state law" prohibitions against cruel and unusual punishment. SAC at 3.[2]

Before the Court are the parties' cross-motions for summary judgment. See Defendants' Motion for Summary Judgment (Doc. 95; Defendants' Motion); Plaintiff's Motion for Summary Judgment (Doc. 97; Plaintiff's Motion).[3] Hardin filed a Response to Summary Judgment (Doc. 100; Hardin's Response), and Defendants filed a Response in Opposition to Plaintiff's Motion (Doc. 109). On December 9, 2020, the Court directed Defendants to file a reply addressing Hardin's assertions in his Response regarding exhaustion. See Order (Doc. 108). Defendants filed a Reply (Doc. 116; Defendants' Reply). The Motions are ripe for review.

## II.   Hardin's Second Amended Complaint

Hardin alleges that on December 26, 2017,

> I was placed in a cell with a gang member who advised [a]forementioned off[icer]s that he would slap the sh*t out of me should I become his cellmate. [Af]orementioned off[icer]s placed me in the cell [and]

---

[2] The Court previously dismissed all claims against Defendant Gamble, see Order (Doc. 61), and all claims for monetary damages against Defendants Jones and Zarate in their official capacities, see Order (Doc. 67).

[3] The Court advised Hardin of the provisions of Federal Rule of Civil Procedure 56, notified him that the granting of a motion to dismiss or a motion for summary judgment would represent a final adjudication of this case which may foreclose subsequent litigation on the matter, and gave him an opportunity to respond to Defendants' Motion. See Order (Doc. 36); Summary Judgment Notice (Doc. 96).

> I was slap[p]ed and pushed onto the floor and punched in the left temple x3. All officials refused to remove me from the cell [and] allowed this inmate to batter me for approx[imate]ly 6½ hours. On or about Jan[uary] 1[,] 2018[,] Inspector Gamble investigated the assault [and] took pictures of [the] injuries. All officers acted in offic[i]al capacity at [the] time of [the] inc[i]dent [and] fu[r]ther knowingly/willingly subjected me to cruel [and] unusual punishment.

SAC at 5 (paragraph enumeration and some capitalization omitted). Hardin asserts that as a result of Defendants' unconstitutional and negligent conduct, he suffered severe bruising to the left side of his face and continues to experience extreme paranoia. Id. As relief, he requests $35,000 in monetary damages. Id.

On the complaint form, with respect to exhaustion of his administrative remedies, Hardin states that he did not have to file a grievance "due to [r]eporting [Prison Rape Elimination Act (PREA)] due to sexual assault which caused Inspector [G]amble (I.G.'s office) to investigate [p]hysical battery/assault as well." Id. at 6; see also id. at 7 (Hardin checked "No," in response to the question of whether he filed any grievances concerning the facts relating to his complaint). He states that "Sgt DeMario . . . contacted Shift Supervisor and he contacted Inspector Gamble." Id. at 8. He further advises that he did not file any grievances because the "[i]ssue was automatically ref[erre]d to Office of [I]nspector [G]eneral." Id.

3

### III. Discussion

When a defendant raises a failure-to-exhaust defense in a motion for summary judgment, the Court must treat the motion as a motion to dismiss, because the determination of whether an inmate exhausted his available administrative remedies is a matter of abatement. Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008). For the reasons set forth below, the Court finds that Hardin failed to exhaust his administrative remedies prior to filing this case. As such, the Court need not address the parties' summary judgment arguments.

### A. Parties' Positions Regarding Exhaustion

According to Defendants, Hardin acknowledges in his Second Amended Complaint that he did not file any grievances regarding the claims he raises in this case, and Hardin, for his part, contends he was not required to do so because he had reported a separate complaint pursuant to the PREA. See Defendants' Motion at 13-14. Defendants recognize that Hardin filed a direct grievance on January 2, 2018, but argue that not only did Hardin incorrectly skip the first two steps of the process, but that grievance did not address any of the allegations raised in the Second Amended Complaint. See id. at 15-16. Defendants attach to their Motion a copy of Hardin's January 2, 2018 direct grievance and the FDOC's response. See Doc. 95-1 at 1-3 (grievance log #18-6-02900).

4

In the grievance submitted on January 2, 2018,[4] Hardin stated that he was filing the grievance directly to the Secretary because it involved allegations regarding the PREA. See Doc. 95-1 at 1. He alleged that he reported violations of the PREA to two employees (Lt. Hale and Mrs. Brimes), and Hardin complained about how they responded to his report. See id. at 1-2. Hardin also stated that on December 26, 2017, "Sgt. J. Jones removed the pants in which [Hardin] was wearing during the alleged assault. Due to this negl[i]gence/direct refusal by Lt. M. Hale as well as MHP Mrs. Brimes, the allegations w[ere] not properly reported as well as investigated until 12-28-2017." Id. at 2.

On January 25, 2018, the FDOC responded:

> Your appeal has been reviewed and evaluated. The subject of your grievance was previously referred to the Office of the Inspector General. It is the responsibility of that office to determine the amount and type of inquiry that will be conducted. This inquiry-review may or may not include a personal interview with you. Upon completion of this review, information will be provided to appropriate administrators for final determination and handling.
>
> Your issue regarding staff negligence is a separate issue and should be grieved as such, also, being initiated at the appropriate level.

---

[4] Hardin inadvertently dated the grievance January 2, 2017. See Doc. 95-1 at 1. The prison date stamp shows it was received by the FDOC Inmate Grievance Appeals office on January 8, 2018. See id.

5

> As this process was initiated prior to the receipt of your appeal, your request for action by this office is denied.

Id. at 3.

In Hardin's Response, he asserts that he "addressed all acts by offc/sgt and the fact that he'd been forced at knife point to p[er]form oral sex on cellmate[,] addressing these matters on a DC1-303 in which the institutional admin approved such grievances and further ref[erre]d them to the office of the inspector general." Hardin's Response at 2-3 (some capitalization omitted); see also id. at 7 ("Due to Plaintiff's gr[i]evance[]s being approved at the inst[it]utional level/forwarded to the office of the inspector general he in fact exhausted his administrative rem[edi]es and didn't skip any part of the inst[it]utional gr[i]evance process due to gr[i]evances alleging physical and[/]or sexual abuse . . . being permitted to be filed directly with the central office of [FDOC]."). Hardin contends that he spoke to an inspector around January 1, 2018, and "Defendants' counsel was made aware of all acts . . . during telephone depositions taken . . . in April 2020." Id. at 3; see also id. at 4 (arguing that Defendants "clearly subjected Plaintiff to cruel and unusual punishment which is clearly reflected in deposition transcripts and amended complaint as well as in gr[i]evance[]s submitted and approved by the inst[it]ution and forwarded to Inspector's office and investigated by Inspector J. Gamble in January 2018").

In the Reply, Defendants assert that Hardin was released from custody on January 28, 2018, and returned to custody for a new commitment in July 2018. See Defendants' Reply at 3; see also Doc. 116-3 (inmate movement/transfer history sheet showing Hardin was released on January 28, 2018, and that he returned to custody on July 24, 2018). Recognizing that the form Hardin says he used to file his grievance—DC1-303—can be used to file a formal grievance or a grievance appeal/direct grievance, Defendants argue that Hardin's grievance records demonstrate that he did not file any formal grievances between December 26, 2017 (the date of the alleged incident), and January 28, 2018 (his release date), and the only grievance appeal (or direct grievance) he did file during that time is the one attached to Defendants' Motion. See Defendants' Reply at 3, 8. In support of these assertions, Defendants submitted the Declaration of Ramona Cox-Pye (Doc. 116-1), a Correctional Services Assistant Consultant in Public Records with the FDOC, and the Declaration of Lawanda Sanders (Doc. 116-2), who is employed at the FDOC's Central Office. Ms. Cox-Pye avers that she reviewed Hardin's file, and he did not submit any formal grievances between December 26, 2017, and January 28, 2018. See Doc. 116-1 at 1. Ms. Sanders avers that Hardin submitted one grievance appeal (log #18-6-02900)—the same grievance that is attached to Defendants' Motion and detailed above—between December 26,

7

2017, and January 28, 2018. See Doc. 116-2 at 1. Ms. Sanders attaches to her Declaration a grievance appeal log which confirms her statement. See id. at 2.

## B. Governing Legal Authority Regarding Exhaustion

The Prison Litigation Reform Act (PLRA) requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a). Nevertheless, a prisoner is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant, 530 F.3d at 1374. Not only is there an exhaustion requirement, "the PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so

> that the agency addresses the issues on the merits)."
> Pozo,[5] 286 F.3d, at 1024. . . .

Woodford, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." Id. As such, the United States Supreme Court has emphasized:

> Courts may not engraft an unwritten "special circumstances" exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are "available."

Ross v. Blake, 136 S.Ct. 1850, 1862 (2016).

The Eleventh Circuit has explained the two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082.[6] First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that

---

[5] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

[6] Turner v. Burnside, 541 F.3d 1077 (11th Cir. 2008).

> defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015); see Pavao v. Sims, 679 F. App'x 819, 823-24 (11th Cir. 2017) (per curiam).[7]

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. See Fla. Admin. Code r. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance to a designated staff member at the institutional level. See Fla. Admin. Code r. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See Fla. Admin. Code r. 33-103.006. If the matter is not resolved at the institutional level, the inmate must file an appeal to the Office of the FDOC Secretary. See Fla. Admin. Code r. 33-103.007. However, under certain specified circumstances, an inmate can bypass the informal-grievance stage

---

[7] The Court notes that "[a]lthough an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

10

and start with a formal grievance at the institutional level. See Fla. Admin. Code r. 33-103.005(1); 33-103.006(3). Or, an inmate can completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." See Fla. Admin. Code r. 33-103.007(3). Emergency grievances, grievances of reprisal, or grievances regarding sexual abuse when the abuse is alleged to have been committed by the Warden of the institution where the inmate is currently housed are types of "direct grievances" that may be filed with the Office of the Secretary. See Fla. Admin. Code r. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for submission of and responses to grievances. Generally, the following time frames apply. Informal grievances must be received within twenty days from the date on which the incident or action that is the subject of the grievance occurred. See Fla. Admin. Code r. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. See Fla. Admin. Code r. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the Secretary must be received within fifteen days from the date the response to the formal grievance is returned to the inmate. See Fla. Admin. Code r. 33-103.011(1)(c). Likewise, a direct grievance "[m]ust be received within 15 calendar days from the date on which the incident or action which is the subject of the grievance occurred." Fla. Admin. Code r. 33-

11

103.011(1)(d). As to response times, following receipt of the grievance, a written response to an informal grievance must be completed within 15 calendar days; the reviewing authority shall take action and respond to a formal grievance within 20 calendar days of receipt; and the Office of the Secretary has "30 calendar days from the date of the receipt of the grievance" in which to provide a response to a direct grievance and 15 calendar days to respond to an emergency grievance. Fla. Admin. Code r. 33-103.011(3)(a)-(d).

### C. Analysis

Taking Hardin's assertions in his response as true, dismissal is not warranted at the first step of the Turner exhaustion analysis. As such, the Court proceeds to the second step and makes specific findings of fact to resolve disputed issues related to exhaustion.

Defendants have shown, through Declarations of FDOC employees and the grievance appeal log, that Hardin filed one grievance appeal during the relevant time frame. This direct grievance, as detailed above, was written by Hardin on January 2, 2018, and the substance of that grievance does not address the specific claims raised in this lawsuit. Indeed, in the Second Amended Complaint, Hardin raises Eighth Amendment and negligence claims against Defendants Jones and Zarate for allegedly placing him inside a cell with another inmate and leaving him inside that cell after being advised that the other inmate would assault him. Hardin does not mention these claims in

his January 2, 2018 direct grievance. Thus, the filing of that direct grievance did not exhaust Hardin's administrative remedies with respect to the claims raised in the Second Amended Complaint.

The Court further notes that according to the signature block on the initial Complaint, Hardin drafted his Complaint on December 28, 2017, only two days after the alleged incident about which he complains in this case. The Clerk received the Complaint and filed it on January 2, 2018—the same day Hardin drafted the direct grievance. However, an inmate is required to properly exhaust his administrative remedies before initiating a § 1983 action. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012). This is because the inmate must afford the agency a "fair and full opportunity" to address his issues on the merits before he seeks judicial intervention. Woodford, 548 U.S. at 90. Based on the filing date of the Complaint and the submission of the direct grievance, the Court finds that Hardin filed this case before allowing the FDOC a "fair and full opportunity" to address the claims raised in the grievance. Thus, even if that direct grievance included the claims raised in this case, it could not have exhausted Hardin's administrative remedies.[8] See Smith, 491

---

[8] Although Hardin twice amended his Complaint, such amendments cannot change "the important historical fact"—Hardin failed to exhaust his administrative remedies prior to filing this case. See Smith, 491 F. App'x at 83 (citations omitted) ("The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint.").

13

F. App'x at 83, 84 (holding the plaintiff did not properly exhaust his administrative remedies because he "brought" his lawsuit before receiving a response to his grievance appeal and before the response time expired).

Hardin admits in his Second Amended Complaint that he did not submit any grievances related to the claims in this case. While he alleges differently in his response to Defendants' Motion, the records submitted by Defendants refute his assertion that he exhausted his administrative remedies by filing a direct grievance to the Secretary.[9] Defendants have carried their burden of showing that Hardin failed to exhaust his administrative remedies prior to filing this case. Therefore, upon review of the parties' submissions and the file, the Court finds that this case is due to be dismissed without prejudice for Hardin's failure to exhaust.

Accordingly, it is

**ORDERED**:

---

[9] Notably, Hardin drafted the Complaint two days after the alleged incident, and the Complaint was received and filed by the Clerk within one week of the incident. Even if Hardin had submitted an informal grievance regarding the incident—which he does not allege—and that grievance had been approved, it is seemingly inconceivable that he would have submitted the grievance and it would have been received and approved in less than one week. Rather, based on Hardin's allegations in the Second Amended Complaint, it appears that he reported his allegations of sexual assault by his cellmate to a staff member, and Hardin's allegations of sexual assault were subsequently reported to the Inspector General's office, which resulted in Inspector Gamble interviewing him around January 1, 2018.

1. Defendants' Motion for Summary Judgment (Doc. 95) is **GRANTED to the extent** it seeks dismissal for Hardin's failure to exhaust his administrative remedies.

2. Plaintiff's Motion for Summary Judgment (Doc. 97) is **DENIED as moot**.

3. Plaintiff's Motion for Appointment of Counsel (Doc. 106) is **DENIED**.[10]

4. This case is **DISMISSED without prejudice** for Hardin's failure to exhaust.

5. The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 10th day of February, 2021.

MARCIA MORALES HOWARD
United States District Judge

JAX-3 2/8
c:
Joshua N. Hardin, #N28219
Counsel of Record

---

[10] The Court has denied Hardin's requests for counsel on four prior occasions. See Orders (Docs. 50, 75, 77, 86). Appointment of counsel is not warranted.